IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE CHRISTOPHER PAXOS<br>*Debtor* | CASE NO. 12-61280-RK<br>JUDGE RUSS KENDIG<br>CHAPTER 11 |

### CHRISTOPHER PAXOS'S BRIEF IN OPPOSITION TO OBJECTION OF THE UNITED STATES TRUSTEE TO CONFIRMATION OF THIRD PLAN OF REORGANIZATION FOR CHRISTOPHER PAXOS

Christopher Paxos as Debtor and Debtor-in-Possession ("Debtor") responds to the Objection of the United States Trustee to Confirmation of Third Plan of Reorganization for Christopher Paxos [Doc. 198] ("UST" and "Objection"). The UST objects to confirmation on the basis that the Plan is not proposed in good faith and is not feasible contrary to 11 U.S.C. §1129(a)(3) and (11). The UST's Objection is speculative and unfounded and should be denied.

I. THE PLAN IS PROPOSED IN GOOD FAITH.

The UST's contention that the Plan is not proposed in good faith because the Debtor is the de facto owner of Branhaven LLC ("Branhaven") or Scidera Inc. ("Scidera, Inc.") is readily refuted by information in the public record, and a few additional documents.

Section § 1129(a)(3) states that a plan must be "proposed in good faith and not by any means forbidden by law." The UST is not suggesting that the Plan has been proposed by any means forbidden by law.

> The Bankruptcy Code does not define the term "good faith," but "the term is generally interpreted to mean that there exists a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984).
>
> ***
>
> "Although the Sixth Circuit has not defined good faith in the Chapter 11 plan confirmation context, it has done so in the context of analyzing a debtor's good faith in proposing a Chapter 13 plan, holding that courts must, based on the

1

totality of the circumstances, determine whether the plan satisfies the purposes underlying Chapter 13:

> Good faith is an amorphous notion, largely defined by factual inquiry. In a good faith analysis, the infinite variety of factors facing any particular debtor must be weighed carefully. We cannot here promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation. *The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13:* a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources. The decision should be left simply to the bankruptcy court's common sense and judgment.. . . [C]ourts should take into account the totality of the circumstances confronting a debtor . . . when deciding whether or not to confirm a Chapter 13 plan.

*In re Trenton Ridge Investors, LLC, et al.*, 461 B.R. 440, 468-469 (Bankr. S.D.Oh. 2011) (quoting *Metro Emps. Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah),* 836 F.2d 1030, 1033–34 (6th Cir. 1988) (emphasis in original)).

    The UST argues that the Plan does not include potential income from Branhaven or Scidera which the UST speculates are controlled by the Debtor. The UST took the depositions of Elaina Fanno and Branhaven on November 18, 2013 and the Debtor on November 25, 2013. That testimony and the docket (attached as Exhibit 1) and filed pleadings in the bankruptcy case *In re Metamorphix, Inc.* Case No. 10-10273-MFW (Bankr. D. Del. 2101) ("MMI Case") show that Branhaven and Scidera were formed and exist solely to handle certain assets purchased by the secured creditors of MMI. Branhaven and Scidera belong to those creditors and not to the Debtor or Ms. Fanno.

    The public record in MMI's bankruptcy proceedings establishes that Branhaven LLC acted solely in its capacity as Agent for all holders of 12.5% secured promissory notes issued by MMI. *See* [Asset Purchase Agreement attached Order Approving Sale (attached as Exhibit 2) at 1]. Branhaven purchased substantially all of MMI's assets pursuant to an Asset Purchase

Agreement dated March 9, 2011.[1]  *Id.*  The U.S. Bankruptcy Court for the District of Delaware approved the sale on March 17, 2011.  *See* [Order Approving Sale].  The court stated in its Order that Branhaven was "acting solely in its capacity as agent for the holders of a first-priority blanket lien and security interest on substantially all of [MMI's] assets pursuant to a certain issuance of 12.5% notes of [MMI]."  *Id.* at 3.

Branhaven sold and assigned most of the assets it purchased from MMI to Scidera, Inc. on August 24, 2011.  *See* [Bill of Sale, Assignment and Assumption Agreement  (attached as Exhibit 3)].  In consideration of Branhaven's assignment, Scidera issued and delivered to Branhaven, "in its capacity as agent for the [12.5%] Noteholders," a total of 4,000,090 shares of Scidera's common stock."  *Id.* at 2(a).  Branhaven represented and warranted that the shares "will be distributed by Branhaven to the Noteholders pro rata among them in accordance with their holdings of the Notes."  *Id.* at 2(b)(i).  Therefore, Branhaven, as the agent of the 12.5% Noteholders, obtained no equity interest in Scidera.

The Debtor reported his income derived from his work for Branhaven and Scidera.  The UST does not question that income, but rather expresses unsupported suspicion that the Debtor will have other forms of compensation, options, or equity.  The UST did not submit any evidence to establish a basis for his speculation, nor can he.  The Debtor is not a shareholder of either Branhaven or Scidera.  The Rule 2019 Statement Branhaven filed in the MMI case attached a list of all of the 12.5 % Noteholders of MMI.  [MMI Doc. 292] (attached as Exhibit 4). The Debtor is not listed as a 12.5% Note holder for the simple reason that he was not one of them.[2]  Perhaps

---

[1] The only assets retained by Branhaven have to do with a disputed licensing agreement with MMI and BeefTek and related entities.  There are numerous pleadings filed in the MMI Case that relate to BeefTek and the assumption and assignment of the licensing agreement (e.g. MMI Docs. 90, 155, 385).  There are associated liabilities from Celera that depend on the outcome of that litigation which means Branhaven as a large negative net worth.

[2] The affidavit signed by the Debtor in the *Fred Hutchinson Cancer Research Center, et al., v. Branhaven, LLC et al.,* Case No. 3:2011-cv-0710 (E. Dist. Va.) inadvertently identified the

3

recognizing the absence of any evidence to support his position, the UST concedes that his speculation that the Debtor "is really the de facto owner of Branhaven … is not an issue before the court at this time." Objection at 7 n.1.[3]

The Debtor therefore has no interest in either Branhaven or Scidera as their assets are held for the benefit of and are under the control of the 12.5% Noteholders.[4] In addition, the 12.5% Noteholders have been funding the operations of Branhaven and Scidera for some time, as neither entity has yet turned a profit. Until all of those funds are repaid the noteholders will not be made whole on their investment. The suggestion that the Debtor *might someday, somehow* be entitled to additional compensation when he has no express or implied right to demand such payment is no basis to object to confirmation of the Plan. If the Debtor were to propose funding a plan on the basis that he *might someday, somehow* be entitled to additional compensation the UST would certainly oppose it, and the Court would probably refuse to confirm such a plan. *E.g., In re Save Our Springs (S.O.S.) Alliance Inc.,* 632 F.3d 168, 172-73 (5th Cir. 2011) *(plan*

---

Debtor as one of the 12.5% Noteholders. The affidavit was prepared by counsel for Branhaven and the Debtor expected it to be properly prepared for his signature. In retrospect, the Debtor regrets that he did not review the document more carefully.

[3] The UST referred to the Debtor's positions and involvement with Branhaven or Scidera (*see* Opposition at ¶ 29.). The Debtor has acted on behalf of Branhaven and in some instances referred to himself as its managing member or president. Ms. Fanno testified that she had given the Debtor this authority to act for Branhaven but there was no formal title (nor under the Branhaven operating agreement did a formal title have to be given). Fanno. Depo. Pp. 91-2. Therefore, Branhaven was not listed as a company for which the Debtor acted as an officer before the filing of the case on his Statement of Financial Affairs. The record reflects that the Debtor never took any actions on his behalf, but rather always acted in the best interest of the 12.5% Noteholders.

[4] The UST complains about two cars Ms. Fanno purchased using distributions from Branhaven. The UST, however, does not contend that the cars should be factored into the Court's decision on its Objection. In fact, the UST states that its speculation that the Debtor has "an equitable interest in the vehicles … is not an issue before the court at this time." Objection at 7 n.1.

*based on future pledges to non-profit could not be confirmed as pledges were not enforceable contracts).*

The only other substantive argument the UST makes is the contention that the Debtor should not allocate any funds to enable him to pay rent and home maintenance for the next five years. *See* Objection at ¶ 27. The UST does not cite any support for his position. The UST's contention that the Debtor should not be able to rent a place to live is baseless. The fact that he has lived off of the welfare of others should not require others to continue to provide shelter indefinitely. The UST's objection based on the Debtor possibly having additional future income from Branhaven or Scidera cannot be sustained. Therefore, the Plan is proposed in good faith and should be confirmed by the Court.

II. THE PLAN IS FEASIBLE

The UST objects to confirmation that the Plan is not feasible because the Debtor proposes to pay certain tax claims and a contingent debt owed to Spirit SPE Portfolio 2007-1 LLC ("Spirit") outside the Plan. The UST alleges that these claims could require payment of "$1,480,000 over the term of the plan…" Objection p. 9. This is incorrect.

Section 1129(a)(11), requires the Court to find that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). The primary purpose of this so-called "feasibility test" is to determine whether there is a reasonable probability that creditors will receive the payments provided for in the plan. *See In re G-I Holdings Inc.,* 420 B.R. 216, 267 (D.N.J. 2009).

The Sixth Circuit has held that the factors that are relevant to the feasibility determination include the following:(1) the adequacy of the capital structure; (2) the earning power of the

5

business; (3) economic conditions; (4) the ability of management; (5) the probability of the continuation of the same management; and (6) any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. *In re U.S. Truck,* 800 F.2d 581, 589 (6th Cir. 1986). The UST's Objection raises only factors (1) and (6) of this test.

First, the UST misconstrues the Plan. The Plan proposes to distribute the Borrowed Funds (defined in the Plan) to creditors. The payments to the Tax Claims and to Spirit are thus "outside the Plan," to use Chapter 13 parlance. These payments therefore do not require demonstration that funds will be available to pay them on the Effective Date.

Second, neither of these claims has been liquidated. The Tax Claims arise from estimated withholding tax claims from PPCI. As explained in the Debtor's objections to the IRS Tax Claim [Doc. 179] of the $381,578 that seems to be for estimated withholding taxes from PPCI and associated penalties, $153,758 is for periods after the Debtor left PPCI, as it was placed in receivership on July 9, 2010. The Debtor further believes that $200,000 was paid to the IRS for withholding taxes during the receivership. The State of Ohio Tax Claim also makes claims that arise after the receiver was in place for PPCI. Therefore the Tax Claims will be substantially reduced. The Debtor will present testimony that funds can be made available, if necessary, to pay the likely amount of the Tax Claims over 5 years.

The Spirit Claim also has substantial contingencies, and is currently the subject of an adversary proceeding. As noted in the Objection, only if the Spirit Claim is non-dischargeable will the Debtor have to find a way to pay the Claim with other than Borrowed Funds. Even if the Spirit Claim is not deemed dischargeable the *amount* not dischargeable has yet to be determined by the Court.

Finally, both the Tax Claims and the Spirit Claims, if so held by the Court, would be non-dischargeable. Further reorganization by the Debtor for those claims is therefore unlikely as it would provide him no discharge.

The required payment of the Spirit and Tax Claims by the Debtor outside the Plan has not been determined, and such mere speculation about the amount of those Claims should not be permitted to derail payment of the Claims clearly covered by the Plan.

### III. THE REMAINING OBJECTIONS RAISED BY THE UST ARE OF NO IMPORT

The UST objects because Elaina Fanno owns 1% of CNAI LLC the entity that purchased the Debtor's home pursuant to an order of this Court. Ms. Fanno was granted that interest so someone could sign contracts for CNAI for repairs at the house if Nikolas Paxos the Debtors father is away. The UST asserts some issue exists because the agreement giving Ms. Fanno that interest (attached as Exhibit 5) is dated *as of* December 20, 2012 which was before the motion to sell the house was filed. However in her deposition Ms. Fanno could not recall when the agreement was actually executed. The motion to sell does show Nikolas Paxos as the owner of CNAI and does not mention Ms. Fanno. Mr. Paxos owns the other 99% of CNAI. In any practical meaning of the term Mr. Paxos is the owner of CNAI as disclosed in the motion to sell, and it is not clear that the agreement to grant Ms. Fanno 1% of the interest had been reached before the motion was filed. There is no merit to the UST's contention that the granting of a 1% interest to Ms. Fanno for the purpose of managing the house on behalf of CNAI is in any way misleading or evidence of bad faith by the Debtor.

The Debtor is committing his future income to the Plan, albeit by borrowing slightly more than his projected net income over five years and paying that as soon as possible to creditors. This approach has the additional benefit of reducing the administrative expenses that

would be incurred by holding the case open for five years, including among other things quarterly fees to the UST.

## CONCLUSION

The Plan is proposed in good faith and is feasible. The creditors have voted in favor of confirmation of the Plan. The Objection of the UST to confirmation should be overruled. Therefore, Christopher Paxos Debtor and Debtor-in-Possession requests that the Court enter an order overruling the UST's Objection and confirming the Plan.

                                                      Respectfully Submitted,
                                                     /s/ Frederic P. Schwieg, Esq.
                                                     Frederic P. Schwieg, Esq. (0030418)
                                                     Attorney at Law
                                                     2705 Gibson Dr
                                                     Rocky River, Ohio 44116
                                                     (440) 499-4506
                                                     fax (440) 398-0490
                                                     fschwieg@schwieglaw.com
                                                     Attorney for Christopher Paxos

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this In Response To Objection Of The United States Trustee To Confirmation Of Third Plan Of Reorganization For Christopher Paxos was electronically transmitted on or about December 2, 2013 via the Court's CM/ECF system to the following who are listed on the Court's Electronic Mail Notice list or was served by U.S. mail, postage prepaid, or certified mail on the persons below as indicated below.
Electronic Mail Notice List
The following is a list of the parties who are on the list to receive e-mail notice/service for this case:

Emily C. Barlage on behalf of Creditor FDIC as Receiver for Tennessee Commerce Bank
ebarlage@frantzward.com, dlbeatrice@frantzward.com

Edward J Boll, III on behalf of Defendant HSBC Bank USA NA Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-8
nohbk@lsrlaw.com

Edward J. Boll, III on behalf of Creditor Wells Fargo Bank, NA
nohbk@lsrlaw.com

Carrie M Brosius on behalf of Creditor Comerica Bank
cmbrosius@vorys.com, dmkamp@vorys.com

John A. Burnworth on behalf of Defendant Christopher Paxos
jburnworth@kwgd.com, mhelmick@kwgd.com

David E Butz on behalf of Debtor Christopher Frank Paxos
dbutz@kwgd.com, mhelmick@kwgd.com

David E Butz on behalf of Defendant Christopher Paxos
dbutz@kwgd.com, mhelmick@kwgd.com

David E Butz on behalf of Spec. Counsel Krugliak, Wilkins, Griffiths & Dougherty Co., LPA
dbutz@kwgd.com, mhelmick@kwgd.com

Jeremy M Campana on behalf of Creditor HSBC Bank USA N.A.
jeremy.campana@thompsonhine.com

Jeremy M Campana on behalf of Creditor Wells Fargo Bank, NA
jeremy.campana@thompsonhine.com

Thomas R Houlihan on behalf of Creditor Ohio Dept. of Job & Family Services
Houlihan@amer-law.com, crogers@amer-collect.com;rschroeter@amer-collect.com;thoulihan@pacernotice.com

Thomas R Houlihan on behalf of Creditor Ohio Dept. of Taxation
Houlihan@amer-law.com, crogers@amer-collect.com;rschroeter@amer-collect.com;thoulihan@pacernotice.com

Melissa A. Jones on behalf of Creditor FDIC as Receiver for Tennessee Commerce Bank
mjones@frantzward.com, dlbeatrice@frantzward.com

Scott A King on behalf of Defendant HSBC Bank USA NA Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-8
scott.king@thompsonhine.com, diane.macleod@thompsonhine.com;mary.romanak@thompsonhine.com

Scott A King on behalf of Defendant Wells Fargo Bank NA,
scott.king@thompsonhine.com, diane.macleod@thompsonhine.com;mary.romanak@thompsonhine.com

9

Jennifer L. Maffett on behalf of Creditor HSBC Bank USA N.A.
thdaytonecf@thompsonhine.com, jennifer.maffett@thompsonhine.com

Jennifer L. Maffett on behalf of Creditor Wells Fargo Bank, NA
thdaytonecf@thompsonhine.com, jennifer.maffett@thompsonhine.com

Jennifer L. Maffett on behalf of Defendant HSBC Bank USA NA Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-8
thdaytonecf@thompsonhine.com, jennifer.maffett@thompsonhine.com

Jennifer L. Maffett on behalf of Defendant Wells Fargo Bank NA,
thdaytonecf@thompsonhine.com, jennifer.maffett@thompsonhine.com

Michael J O'Shea on behalf of Creditor Spirit SPE Portfolio 2007-1 LLC
michael@moshea.com, ron@moshea.com

Michael J O'Shea on behalf of Plaintiff Spirit SPE Portfolio 2007-1 LLC
michael@moshea.com, ron@moshea.com

Beth Ann Schenz on behalf of Creditor THE HUNTINGTON NATIONAL BANK
bkecf@huntington.com

Richard P Schroeter, Jr on behalf of Creditor Ohio Dept. of Taxation
rschroeter@amer-collect.com, thoulihan@pacerhq.com;crogers@amer-collect.com

Frederic P Schwieg on behalf of Attorney Frederic P Schwieg
fschwieg@schwieglaw.com

Frederic P Schwieg on behalf of Debtor Christopher Frank Paxos
fschwieg@schwieglaw.com

Frederic P Schwieg on behalf of Plaintiff Christopher Paxos
fschwieg@schwieglaw.com

John W Solomon on behalf of Creditor Comerica Bank
jwsolomon@vorys.com, sasiciliano@vorys.com;mlteuscher@vorys.com

Elia O. Woyt on behalf of Creditor Comerica Bank
eowoyt@vorys.com, eowoyt@vorys.com

Maria D. Giannirakis ust06 on behalf of U.S. Trustee United States Trustee
maria.d.giannirakis@usdoj.gov

Amy Good ust08 on behalf of U.S. Trustee United States Trustee
amy.l.good@usdoj.gov

        /s/ Frederic P. Schwieg
        Frederic P. Schwieg

10

12-61280-rk    Doc 202    FILED 12/02/13    ENTERED 12/02/13 16:55:28    Page 10 of 10